**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   CC-14-1037-DaKiKu
                                          )
OFF DOCK USA, INC.,                       )    Bk. No.   12-41328
                                          )
                    Debtor.               )    Adv. No.  13-01778
_____          )
                                          )
OFF DOCK USA, INC.,                       )
                                          )
                    Appellant,            )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
BEACH BUSINESS BANK,                      )
                                          )
                    Appellee.             )
_____          )

Argued and Submitted on September 18, 2014
at Pasadena, California

Filed - June 24, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

_____

Appearances:    Larry Wayne Gabriel of Jenkins Mulligan & Gabriel
                LLP argued for appellant Off Dock USA, Inc.;
                Gayle I. Jenkins of Winston & Strawn, LLP argued
                for appellee Beach Business Bank.

_____

    [*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

1

Before: DAVIS[**], KIRSCHER, and KURTZ, Bankruptcy Judges.

Memorandum by Judge Davis
Partial Concurrence and Partial Dissent by Judge Kurtz

## INTRODUCTION

Appellant Off Dock USA, Inc. ("Off Dock") appeals the bankruptcy court's order dismissing its amended adversary complaint against Appellee Beach Business Bank ("Beach"). For the reasons set forth below, we AFFIRM.

## FACTS[1] AND PROCEDURAL HISTORY

Off Dock's amended complaint contained three causes of action, as follows: (1) for breach of the implied covenant of good faith and fair dealing; (2) for breach of fiduciary duty; and (3) for intentional interference with prospective economic advantage. The amended complaint refers to and attaches the November 5, 2009 agreement for a $1,650,000 loan, and the March 30, 2011[2] agreement for a $3,000,000 loan.

---

[**]Hon. Laurel E. Davis, United States Bankruptcy Judge for the District of Nevada, sitting by designation.

[1]We take judicial notice of the adversary proceeding docket and the documents filed through the electronic docketing system. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989) (appellate court may take judicial notice of underlying bankruptcy records).

[2]Where the amended complaint refers to a 2010 loan, it also refers to Exhibit 2, the 2011 loan agreement. It thus appears that other references in the amended complaint to a 2010 loan are in error, and this memorandum will use the term 2011 loan instead.

According to Off Dock's amended complaint[3], in 2003 and 2004, Off Dock launched, through its predecessor business names, a business of owning and operating an intermodal depot facility for storing and maintaining cargo shipping containers. Off Dock subsequently leased 15 acres in the City of Carson, California, to use as the staging area for its business.

In 2006, Beach provided Off Dock with an initial $250,000 credit facility that consisted of a $150,000 loan and a $100,000 line of credit. Thereafter, Off Dock and Beach communicated frequently regarding Off Dock's business operations and profitability.

Off Dock exhausted its credit line, and in December 2008, Beach and Off Dock entered into a forbearance agreement. As a condition of the forbearance agreement, Beach required Off Dock to hire an outside consultant, Phelps Consulting Group, Inc. and its principal Ted Phelps (collectively "Phelps"), to oversee Off Dock's day-to-day business operations, which Off Dock claims was equivalent to a liquidating receiver for Beach. Off Dock was also required to close its accounts with other financial institutions and keep all of its accounts at Beach.

In the first quarter of 2009, Off Dock obtained a new loan from Beach in the amount of $1,650,000, and Off Dock's 2006 loan with Beach was repaid from the proceeds. Off Dock claims that Beach insisted the 2009 loan proceeds could only be used to pay "qualified account payables," resulting in non-payment of

---

[3]The facts are drawn from the amended complaint, which we must accept as true. Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011).

3

government fees, taxes, executive compensation or any vendor whose account payable was in excess of 45 days.

In December 2009, after Phelps had been paid approximately $450,000, Off Dock fired Phelps with Beach's consent. Off Dock then hired Plan Bravo Partners, LLC, whose principals were Charles W. Stevens and Joseph Prochot (collectively "Bravo").

Off Dock claims that through Bravo, Beach exerted undue control over Off Dock alleging that Beach instructed Bravo as to what collections to make and Beach communicated directly with Off Dock's customers and a prospective customer. The alleged undue control by Beach is claimed to have resulted in an adverse impact on Off Dock's interests and business operations.

In 2010, Off Dock began discussions with a new client to expand its business and develop an exclusive repair program for chilled containers, which required additional funding. Off Dock alleges that Beach insisted upon meeting the customer, visiting the proposed site for the project, and preparing numerous cash flow projections to determine the size and structure of the loan. However, the 2009 loan agreement contained a negative covenant that prevented Off Dock from engaging in "business activities substantially different than those in which Borrower is presently engaged."

In 2011, Beach loaned Off Dock $3,000,000, which extended and increased the 2009 loan. Off Dock claims the 2011 loan was conditioned upon the continued employment of Bravo and prepayment of Off Dock's lease obligation on the City of Carson lease in a manner designed to eliminate Beach's exposure on the loan and result in a guarantee of the entire 2011 Loan by the Small

4

Business Administration.

In December 2011, Off Dock claims it attempted to terminate Bravo because Bravo, who was paid in excess of $750,000, provided no benefit to Off Dock and adversely impacted Off Dock's financial condition. Bravo was ultimately terminated in February 2012, after a "transition period" mandated by Beach.

Beach did not disburse the final $150,000 of the 2011 Loan. Off Dock claims Beach did so with knowledge that Off Dock would not be able to fund or fulfill the existing contracts for its new business opportunity, thus causing Off Dock to lose this new business opportunity.

In April 2012, Beach declared a default of the 2011 Loan. Off Dock claims that Beach refused to meet with Off Dock's management, swept Off Dock's bank accounts, and notified Off Dock's major vendors to pay Beach directly or risk double liability. Beach then sought, but did not obtain, the appointment of a receiver.

On September 14, 2012, Off Dock filed a petition for chapter 11 relief in the Central District of California, Los Angeles Division, as Case No. 2:12-bk-41328-TD. Two months later, Off Dock commenced its adversary proceeding against Beach, seeking damages for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing.

The bankruptcy court granted Beach's motion to dismiss the complaint under Rule 7012[4] and Civil Rule 12(b)(6), with leave to

[4]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
(continued...)

amend, holding as follows:

(1) The relationship between a lending institution and a borrower is not fiduciary in nature, absent special circumstances such as a lender's unusually active participation in the financed enterprise. *See Nymark v. Heart Fed. Savings & Loan Assoc.*, 231 Cal. App. 3d 1089, 1093 n.1, 1096 (1991). A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Id*.

(2) The First Cause of Action, Breach of Fiduciary Duty, must be dismissed because the Complaint does not allege anything more than a series of arms-length transactions in which Plaintiff Off Dock . . . and [Beach] negotiated terms [Beach] utilized to protect its investment.

(3) The implied covenant of good faith and fair dealing is a supplement to express contractual terms. *See Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-94 (2004). Therefore, [Off Dock] must cite to specific contractual terms from which it asserts the implied covenant arises here.

(4) The Second Cause of Action, Breach of the Implied Covenant of Good Faith and Fair Dealing, must be dismissed because [Off Dock] does not cite to specific contractual terms with respect to [Beach's] pre-contract negotiation conduct and distribution of loan proceeds. [Off Dock] does not identify how [Beach's] exercise of discretion in identifying "qualifie[d] accounts payable" frustrates [Off Dock's] ability to receive the rights or benefits of the agreement.

Off Dock then filed its amended complaint. The amended complaint adds a third cause of action for intentional interference with prospective economic relations and inexplicably reduces and summarizes the allegations of the complaint into a document that is only five paragraphs longer than the complaint. The amended complaint also contains copies of the 2009 and 2011 loan

---

[4](...continued) all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

agreements.

Beach, again, promptly moved to dismiss, arguing that the amended complaint merely repackaged the same allegations previously deemed insufficient to state claims for relief. The bankruptcy court agreed and dismissed the amended complaint without leave to amend, holding that "Plaintiff's First Amended Complaint adds no new allegations but is simply a reconfiguration of the allegations of the original complaint," incorporating by reference Beach's motion and reply filed with respect to the complaint. However, the record is not clear as to the reasons why the bankruptcy court dismissed the new third cause of action for relief for intentional interference with prospective economic relations, raised for the first time in the amended complaint.[5] Off Dock timely appealed this order.[6]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it dismissed the claims for relief stated in Off Dock's amended complaint?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's Civil Rule 12(b)(6)

---

[5] Beach's motion to dismiss the amended complaint was submitted on the pleadings.

[6] Off Dock does not appeal the bankruptcy court's denial of leave to amend. We, therefore, do not address that portion of the bankruptcy court's ruling.

7

dismissal. Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011).

**DISCUSSION**

**I. Civil Rule 12(b)(6) Standards**

When we review a matter de novo, we consider the matter anew as if the bankruptcy court had not previously ruled. Sachan v. Huh (In re Huh), 506 B.R. 257, 262 (9th Cir. BAP 2014)(en banc). Therefore, we apply the same standards to Civil Rule 12(b)(6) dismissal motions that all other federal courts are required to apply. In re Belice, 461 B.R. at 572-73.

Under Rule 7012 and Civil Rule 12(b)(6), a bankruptcy court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. See Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008). As the Supreme Court has explained:

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations and internal quotation marks omitted).

In reviewing the sufficiency of a complaint under Civil Rule 12(b)(6), we must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the

8

plaintiff. Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011); Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). However, we do not need to accept as true conclusory allegations in a complaint or legal characterizations cast in the form of factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

We also may consider the existence and content of documents attached to and referenced in the complaint as exhibits. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001); Durning v. The First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Even where a document is not physically attached to the complaint, we may consider its existence and contents when its authenticity is not contested and when it necessarily is relied upon by the plaintiffs in their complaint. See United States v. Ritchie, 342 F.3d 903, 907-908 (9th Cir. 2003); Lee, 250 F.3d at 688.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing (First Claim for Relief)

The bankruptcy court originally dismissed this claim for relief in the complaint because it: (1) failed to cite to specific contractual terms from which the implied covenant allegedly arises in this case; (2) failed to cite to specific contractual terms with respect to Beach's pre-contract negotiation conduct and distribution of loan proceeds; and (3) failed to identify how Beach's exercise of discretion in identifying "qualified accounts payable" frustrates Off Dock's ability to receive the rights or benefits of the agreement. Because it adds "no new allegations but is simply a reconfiguration of the allegations of the original complaint,"

9

this claim for relief was also dismissed when the bankruptcy court granted the motion to dismiss the amended complaint. The reconfigured amended complaint generally described and attached copies of the 2009 and 2011 loan agreements, but it did not identify any of their terms, and reduced from seven to four the operative paragraphs of this claim for relief. Based upon our de novo review, the amended complaint fails to satisfy the relevant standards and the bankruptcy court properly dismissed it.

As a preliminary matter, because the implied covenant is a **supplement to an existing contract**, it does not require parties to negotiate in good faith **prior to entering** into any agreement. For that reason, any allegations that a defendant violated the implied covenant **during** the negotiation of a loan fail to state a claim. McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 799 (2008) (citing Racine & Laramie, Ltd., Inc. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992)). Off Dock is thus not able to rely upon the first 12 paragraphs of the amended complaint to support this cause of action because those paragraphs allege facts that occurred prior to the parties' execution of the 2009 and 2011 loan agreements.

In California, "[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the **express terms** of the contract, and cannot be extended to create obligations not contemplated by the contract." Pasadena Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1094 (2004) (quoting 1 Witkin, Summary of Cal. Law (2003 supp.) Contracts, § 743, p. 449) (emphasis in original). Because the covenant is implied into the contract, it is limited to ensuring compliance

10

with the express contractual terms agreed to by the parties and does not create additional obligations on the parties. See Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995) ("[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."). In order to prevail, a plaintiff must "identify the specific contractual provision that was frustrated." Plastino v. Wells Fargo Bank, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (citation and internal quotation marks omitted).

Other than to provide copies of the 2009 and 2011 loan agreements as exhibits, the amended complaint wholly fails to identify any express provision of either loan agreement that is disturbed by the alleged breaches of the implied covenant. Instead, Paragraph 34 of the amended complaint claims that Beach breached the implied covenant of good faith and fair dealing by "exercising complete dominion and control over Off Dock's business operations, including controlling the use of the loan proceeds such that Off Dock was denied the benefit of its bargain (the use of the loan proceeds)." The rest of this claim for relief consists of incorporation by reference of the prior 33 paragraphs of the amended complaint which are likewise devoid of any express term of either loan agreement.

Further, a cause of action for breach of the implied covenant fails when the contract authorizes defendant's actions. See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 374 (1992). As set forth on page one of each

11

loan agreement, Beach's obligation to make loan advances under each loan agreement was "subject to the fulfillment to [Beach]'s satisfaction of all of the conditions set forth in this Agreement and in the Related Documents." Those conditions include, among other terms, Off Dock's multiple covenants and representations made in support of each loan, as well as the absence of an event of default. Moreover, each loan agreement authorized Beach to cease loan advances even in the absence of an event of default:

> CESSATION OF ADVANCES. If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: . . . (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

For all of these reasons, the amended complaint fails to state facts giving rise to a plausible claim and we affirm the bankruptcy court's order dismissing the first claim for relief.

## III. Breach of Fiduciary Duty (Second Claim for Relief)

In California, "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature. Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1093 n.1 (1991). "A commercial lender is instead entitled to pursue its own economic interests in a loan transaction." Id. "This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." Id. As a result:

> [A] financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. . . . Normal supervision of the enterprise by the lender for

12

the protection of its security interest in loan collateral is not active participation in the financed enterprise beyond that of the ordinary role of a lender in a loan transaction.

Id. at 1096-1097. (Citations, brackets and internal quotation marks omitted.)

Thus, "a lender does not assume any obligations regarding the viability of the project or investment which is financed by the loan funds as long as the conduct of the lender is limited to the activities which customarily are associated with the lending function." Peterson Dev. Co. v. Torrey Pines Bank, 233 Cal. App. 3d 103, 119 (1991) (citations and internal quotation marks omitted).

Off Dock alleges that Beach exceeded the role of a conventional lender by exerting excessive control over Off Dock's business operations and thus committed a breach of fiduciary duty. In order to prevail, Off Dock must prove: "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991).

Off Dock's amended complaint asserts that Beach had a "fiduciary responsibilit[y] to act in the best interests of Off Dock," citing Barrett v. Bank of Am., 183 Cal. App. 3d 1362 (1986). Off Dock appears to rely upon dicta contained in the Barrett court's discussion of trial court error in failing to provide a jury instruction on constructive fraud, wherein the court states "[t]he relationship of a bank to depositor is at least quasi-fiduciary" and recognizes a "duty of disclosure of facts which may place the bank or a third party at an advantage

13

with respect to the customer." Id. at 1369.

Barrett involved the question of constructive fraud. In Barrett, the bank's loan officer advised the borrowers that they would be released from personal guarantees if they consummated a merger of their business, but withheld information that the bank stood to benefit from the merger. Id. at 1365, 1369. The borrowers in Barrett had also shared unfavorable confidential information with the officer and relied upon the officer's advice. Id. at 1369.

We agree with the bankruptcy court that the continued validity of Barrett is questionable:

> The holding[] of . . . *Barrett* [is] inconsistent with both past authority and current trends in the law. It has long been regarded as axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor. . . . A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such. The same principle should apply with even greater clarity to the relationship between a bank and its loan customers.

Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 476 (1989).

Off Dock's other case authority[7] also fails to establish the existence of a fiduciary duty. Wagner v. Benson, 101 Cal. App. 3d 27 (1980), involved claims against a lender brought by

---

[7]Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co., 307 F.3d 944, 949-55 (9th Cir. 2002) is an action by an investment trust against its insurance company for the insurance company's failure to defend the investment trust in a third party action for fiduciary breach. The Pension Trust case did not address the substantive sufficiency of the allegations of the breach of fiduciary claims (on which Pension Trust prevailed at trial against Winncrest), but whether the allegations alone were sufficient to trigger a duty to defend.

14

individual plaintiffs who speculated in a cattle raising program. A third party, MSR, acted as the plaintiffs' agent in buying, maintaining and marketing the cattle, including "prenegotiating" plaintiffs' loan with the bank.  Beef prices declined and costs rose, ultimately resulting in a default of the loan.  Plaintiffs sued the bank, alleging that the bank had assured them the investment was "safe" and the margin calls to maintain the 75% loan to value ratio would be minimal.  The trial court dismissed plaintiff's negligence and bad faith claims and limited trial to the claim for misrepresentation.  The court of appeals affirmed summary disposition of the plaintiffs' claims at trial, reiterated the general rule enunciated by Nymark and held "[t]he Bank's limited involvement in the MSR enterprise falls far short of the extensive control and shared profits which give rise to liability." Wagner, 101 Cal. App. 3d at 35.

In addition, Kim v. Sumitomo Bank of Calif., 17 Cal. App. 4th 974 (1993), is not applicable here.  Off Dock's representation that Kim held "a borrower [sic] exercises excessive control over a borrower where the lender dominate[s] the borrower to the extent that the borrower has lost its separate identity," is erroneous.  That language was not the court's holding, but was merely a quote from a law review article cited by plaintiffs and rejected by the court.  Id. at 980.  Kim instead involved an action for fiduciary breach arising from the loan document's requirement for a disbursing agent, wherein the court of appeals affirmed the trial court's order granting summary judgment in favor of the bank, holding as a matter of law that the bank was not liable as either a "control lender" or

based upon a theory of fiduciary breach. Id. at 979-984.

Similar to the borrowers in Kim, Off Dock complains of conduct that is authorized by the agreements it signed with Beach and thus cannot argue these requirements form the basis of a claim for breach of fiduciary duty. Off Dock's most pervasive allegation challenges the forbearance agreement's requirement that Off Dock hire outside management consultants. However, the 2009 loan agreement maintains this requirement by its provision that Off Dock comply with all of the terms and conditions of the forbearance agreement. Both loan agreements require Off Dock to maintain executives and management with the same qualifications and experience as present personnel, with written notice to Beach of any changes.

Off Dock also heartily complains about the quantity of business and financial information provided to Beach, sometimes gained through direct communications with Off Dock's outside consultants, vendors, and customers. Both loan agreements contain extensive provisions that grant Beach "free access" to virtually all of Off Dock's premises, operations, books and records, regardless of whether or not such information is in the possession of third parties. Additionally, Off Dock must provide Beach with periodic financial reports, permit Beach to "examine and audit" Off Dock's books and records, and provide Beach with financial reports requested by Beach "at such frequency and in such detail as lender may reasonably request."

Off Dock's fatal problem here is the conclusory allegations of the amended complaint. As noted above, despite the bankruptcy court's dismissal of its complaint for failure to state a claim

16

for relief, Off Dock chose to reduce, in a reconfigured fashion, rather than enhance the allegations in the amended complaint. In doing so, Off Dock's allegations have become even more conclusory and thus less likely to state a claim for relief for breach of fiduciary duty. In identifying the "special relationship" between Off Dock and Beach, the amended complaint simply concludes that Beach's requirement for outside consultants results in Beach's "dominion and control" over Off Dock's operations, with one line about collections and "interfacing with Off Dock's customers," which as set forth above, is authorized by the loan agreements.

The Supreme Court has made it clear that "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are insufficient. Plaintiff must instead articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As a result, "the non-conclusory 'factual content,' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A]nalyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Sheppard v. David Evans & Assocs., 694 F.3d 1045 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 679).

Because Off Dock's second amended complaint did not allege

17

any legally cognizable harm arising from any fiduciary breach, the bankruptcy court did not err when it dismissed Off Dock's fiduciary breach claim.

## IV. Intentional Interference with Prospective Economic Relations (Third Claim for Relief)

The amended complaint adds a new claim for intentional interference with prospective economic relations. Under California law, such a claim has five elements: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (citation and internal quotation marks omitted).

To establish the third element, Off Dock must also plead that Beach's conduct "was wrongful by some legal measure other than the fact of interference itself." Id. at 1153 (citation and internal quotation marks omitted).

> An act is not independently wrongful merely because defendant acted with an improper motive. . . . [T]he law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties. . . . The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct. . . . We conclude therefore that an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory,

18

regulatory, common law, or other determinable legal standard.

Id. at 1158-59. Off Dock asserts this requirement for independently actionable conduct is satisfied because the amended complaint alleges that Beach failed to fully fund the loan and improperly directed the manner in which loan proceeds were distributed.  However, in California, a creditor is entitled "to take all legal steps to obtain payment of [a] debt owed to it, even if the result was that [the debtor] would default on its obligations to other creditors."  Webber v. Inland Empire Inv., 74 Cal. App. 4th 884, 906 (1999).  Indeed, "exercise of [a] contractual right does not constitute wrongful conduct. . . ." Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d 1044, 1090 (E.D. Cal. 2003).  We have already determined that the loan agreements authorized Beach to direct and withhold advances, even in the absence of an event of default.  Thus, based upon our de novo review of the amended complaint, Off Dock did not allege conduct that is independently actionable.  As a result, Off Dock fails to allege an essential element to this claim for relief. For these reasons, Off Dock has failed to allege all of the elements necessary to establish a cause of action for intentional interference with prospective economic relations, and we affirm the bankruptcy court's dismissal of the third cause of action of the amended complaint.

## CONCLUSION

The judgment of the bankruptcy court is AFFIRMED.

Partial Concurrence and Partial Dissent begins on next page.

19

KURTZ, Bankruptcy Judge, concurring in part and dissenting in part:

While I agree with my colleagues' conclusion that the bankruptcy court correctly dismissed Off Dock's claim for intentional interference with prospective economic relations, I disagree with their conclusion that Off Dock failed to state legally-sufficient claims for breach of fiduciary duty and for breach of the implied covenant of good faith and fair dealing.

In Pension Trust Fund for Operating Eng'rs v. Federal Ins. Co., 307 F.3d 944, 955 (9th Cir. 2002), the Ninth Circuit Court of Appeals interpreted California law and explicitly held that "a lender . . . owes a fiduciary duty to a borrower when it excessively controls or dominates the borrower." Id. Following Pension Trust Fund for Operating Eng'rs, the Ninth Circuit reiterated this interpretation of California law in Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 882 n.1 (9th Cir. 2007). Unlike my colleagues, I believe I am bound by Pension Trust Fund for Operating Eng'rs's interpretation of California law on this point. Footnote 7 of the majority decision attempts to explain why we do not need to follow Pension Trust Fund for Operating Eng'rs, but I do not find footnote 7 persuasive.

I also believe that the allegations in Off Dock's amended complaint adequately pled a claim for breach of fiduciary duty. Unlike my colleagues, I do not perceive as conclusory Off Dock's allegations regarding Beach's dominion and excessive control over Off Dock's operations. Indeed, I see the allegations as quite specific on this point. According to the allegations,

1

particularly those in paragraphs 12, 15, 17, 18 and 22 of the amended complaint, Beach insisted, in and after 2009, that Off Dock hire and pay for specific consultants (identified in the amended complaint by name), further insisted that these consultants be given day-to-day control over Off Dock's operations, and further insisted that the consultants take their orders from Beach.

The amended complaint also contained some specifics regarding how Beach exercised control through the consultants. For instance, in paragraphs 26 and 27 of the amended complaint, Off Dock alleged that, at Beach's insistence, the consultants ran Off Dock's bookkeeping and accounting departments, interfaced with Off Dock's clients, attended or participated in sales efforts, controlled Off Dock's hiring and firing of personnel, interviewed customers and prospective customers so that Beach could approve them, controlled payments made to vendors, and made collection demands on Off Dock's customers, even when Off Dock would not have made such demands, out of fear that it would adversely affect its business relationship with those customers. These specifics meet or exceed the level of factual detail required to state a claim under federal law. See Fed.R.Civ.P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."). The amended complaint also adequately explained how Beach violated its fiduciary duty: by putting its own interest in minimizing its risk exposure arising from the loans over Off Dock's interest in successfully operating its business.

I likewise believe that these same allegations sufficiently

2

pled a claim for breach of the implied covenant of good faith and fair dealing. The majority decision opined that this claim was legally insufficient because it did not explicitly identify the particular provision of the loan agreements implicated by this claim. I disagree. I consider it obvious which contractual obligation of Beach's was implicated: its obligation to make loan advances to Off Dock under certain terms and conditions. See generally Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (citing Twombly and noting that court, in making determination on a motion to dismiss, must consider both the factual content of the complaint and all reasonable inferences that can be drawn from that factual content). In my view, the amended complaint adequately alleged that Beach, in bad faith, stripped Off Dock of its principal contractual benefit under the loan agreements – the receipt of loan funds – by taking control of Off Dock's operations and making operational decisions based on Beach's own interests as opposed to making operational decisions based on Off Dock's interests.

Alternately, the majority decision opines that the implied covenant of good faith and fair dealing is not violated by conduct that the parties' agreement explicitly permits. However, I have not found anything in the record indicating that any provision of the parties' various agreements permitted Beach to exercise dominion and control over Off Dock's operations and run those operations to suit its own interests and in a manner adverse to Off Dock's interests.

In closing, I note my suspicion that Off Dock's claims likely would have made excellent candidates for resolution by

3

summary judgment. Nonetheless, I believe that its claims for breach of fiduciary duty and for breach of the implied covenant of good faith and fair dealing were legally sufficient as alleged and should have survived Beach's 1`Fed.R.Civ.P. 12(b)(6) motion to dismiss.

Accordingly, I respectfully concur in part and dissent in part. I only would have affirmed the bankruptcy court's dismissal of Off Dock's claim for intentional interference with prospective economic relations.